You can call the next case. Case number 09-0338 Pupil v. Murray Square. We'll begin with counsel on behalf of Mr. Ware. 15 minutes for each side. You can begin when you're ready. Yeah, yeah. I want to ask you a question. How about we just get past the formalities? Go ahead. Good morning, Your Honors. My name is Chris Pendick. I'm in the State Appellant's Office on behalf of Murray Square. On October 30, 2008... All right, we've got a question. What was that? Are we giving to all these prisoners in the state of Illinois, when a defendant mocks the court system, calls the judge names, fires every lawyer, calls them a name, to try to get the judge to make an error? Is this the kind of message that we want to give to other prisoners, that this is the way you do it and you'll get relief? No, Your Honor. I think substantial compliance with 401A gives no incentive, I think, in People v. Cleveland. You recognize that, that there is no incentive. Well, I don't think this is a People v. Cleveland situation. I think this is more of a People v. Johnson situation. I would disagree, Your Honor. Well, tell me how you disagree with that. Well, because People v. Cleveland is focused specifically on the intervening circumstance, that the defendant was appointed counsel both in Cleveland and in Ware. It doesn't matter that it was between two stages in Cleveland and here it was just at the pre-trial stage. It was the intervening circumstance. Well, in the case of People v. Cleveland, did that lawyer make a mockery of the criminal justice system? The lawyer or the? I mean the defendant. I don't think the defendant. No, he didn't at all. And the point is, going back to Justice Gordon's question, initial question, regarding what sort of message we're going to be sending here if we were to find error, you're almost giving a defendant an incentive to flip-flop repeatedly with the hope that when the last admonishment under the Supreme Court rule is stated, it falls short of substantial compliance. And I guess the question is, should we look to an admonishment in isolation as opposed to the admonishment spread of record, which? Well, I mean, Cleveland speaks specifically to that. It says, though a defendant may have already heard the necessary information, this alone does not make him fully informed, nor does it remove the trial court's obligation to ensure that he is fully informed. And because he was appointed counsel by that trial court, the trial court then needs to comply with 401A, or at least substantially comply with 401A, which didn't happen at all on October 30th. I understand your point, but it goes to whether fully informed was achieved. In this case, I'm not sure that the defendant would have stood still for anything. And I'm not sure that the defendant would have allowed, I mean, he presented his own, he presented a barrier to allowing the judge to fully comply with the rule. That's what can be ground by this first district, lays out what we need to do in this type of situation. Either you require the defendant to proceed pro se with the proper admonishments on that date, or say you're going to be represented by this attorney, I don't care if you like him or not, it's going to be effective representation by that counsel. Well, should we enter a rule that says once you go pro se, we're not going to change that? Because if we do, we get into this situation where there's a repeated hiring, firing, hiring, firing, and then you need a new admonishment each time? Well, no, I think in that situation where an attorney has been appointed to the defendant and then the defendant requests to go pro se, I think at that point you let the defendant know. How many times, are you saying we only do that once? I mean, I think at a minimum you can do it once. I think if the trial court in this case wanted, I mean, the trial court here acquiesced and appointed at least five attorneys. I would argue on the two private attorneys in Cloak and I believe Mr. Wiener. Maybe six or seven public defenders, at least two private attorneys, one that he selected and all of them he just raved. I think there were four public defenders appointed and then two private attorneys consulted and one was appointed. Well, at one time there was two who represented him, so if you count those two, you get some more. But, you know, the whole problem in my mind is this, and you haven't answered my question at all. When somebody comes and impedes the proceedings and trying to get the judge mad to make a mistake and raves and rants and makes a mockery of the criminal justice system, is this the kind of person that we're going to give relief to? Because if we are, if we are, then every defendant is going to do that and we're going to have no orderly conduct anymore in a trial process. That's where I'm coming from, and you haven't answered my question at all. You keep talking about people versus Cleveland. I'm very familiar with it. I wrote it. But I don't think this is people versus Cleveland. I think what this man did is unconscionable. Unconscionable. And I don't agree with his behavior in front of the court. However, we have to look at what the admonishments were and what the duties of the trial court were here in this situation. And the trial court needed to comply with Supreme Court Rule 401A on October 30th. There's no way around that. You can't use prior admonishments when the defendant has been appointed a new attorney. Even when we get somebody who impedes the process? Even when we get someone, yes. So then Johnson is not good law? No, I would say people be Miles and people be Brown, and people be Johnson is good law. However, he did substantially comply with 401A and people be Johnson. In looking at the second issue of standby counsel, I think why part of the reasoning is we have to get away from substantial compliance and simply determine whether the defendant intelligently and knowingly gives up his right to counsel. So substantial compliance assures that that event occurred. But when that event has been repeated many, many times in the record, I'm not sure that substantial compliance is necessary to ensure that the individual intelligently and knowingly gives up or has a full understanding of his right to counsel. There's no doubt that this individual knew that he had a right to counsel, and he was looking for that ideal counsel, and he never found one. So where's the real harm? Well, the Illinois Supreme Court, people be Hensauer, says that the defendant's full understanding of the right to counsel from the fact that he's been previously requested and been appointed. You cannot infer that. No, no, we're not inferring it from that. We're inferring it from his own actions. He knew he was entitled to counsel. He repeatedly asked for it. I mean, the Illinois Supreme Court simply says that you can't have that presumption. What presumption? That because he had been appointed counsel previously, that he knew of his future right to have counsel. And what court said that? Illinois Supreme Court and Hensauer. It's 45 IL second 63. And what year was that? I believe it was in the 80s, Your Honor. It was. Have you taken a look lately at People v. Simpson, which was written in 1996? I have, Your Honor. What did you think, Simpson? Did Simpson change it at all? Well, I mean, Simpson focuses on the defendant's technical decisions and legal ability are not relevant to an assessment of whether a defendant's knowingly exercised his right to counsel. Let me read you something from Simpson that was not included even in Cleveland and wasn't included in Justice Steigman's. In fact, Justice Steigman doesn't even mention People v. Simpson in his opinion. This court has also repeatedly upheld the continuing waiver rule. We all know what the continuing waiver rule is. It continues throughout, okay? There are two exceptions, according to Simpson. Significantly changed circumstances. Do we have that here? And also the request for counsel part? No, wait. Let's concentrate on the first part. Simpson says there are two exceptions. Significantly changed circumstances. I think we do. We have an appointment of counsel. Oh, and that's so every time he gets a new lawyer, that's a significantly changed circumstance. Absolutely. Proceeding pro se prior to that. So each time he asks for a lawyer and then fires them and then gets a new one, that's a significantly changed circumstance in your view? Yes. I'm not sure that Justice Miller would agree with you, but you're entitled to your opinion. The other exception was a later request for counsel, which would seem to infer, at least as far as Simpson is concerned, that we start looking at this case from the beginning with a defendant who started pro se from the outset. The defendant in this case started pro se? He didn't, though, did he? No, he did not. Okay. Why couldn't Simpson be read, despite the brilliant opinion in People v. Cleveland and in Steinman's opinion, which Cleveland heavily relies on? Why couldn't Simpson, which is a 1996 case, and as far as I know, the most recent pronouncement by the Supreme Court on this issue, be argued that once you've got a lawyer, okay, and you waive them, that's it, kid. And substantial compliance with Supreme Court Rule 401A at that point? All it says here is we believe in the continuing waiver rule. We believe in the continuing waiver rule. In the absence of significantly changed circumstances or a later request for an attorney, assuming that you were a pro se. It would seem to me that Simpson can be read, and that's the last Supreme Court pronouncement that I've seen, Simpson can be read as saying that once you've had a lawyer and waived them, that's it, kid. You don't get another bite at the end. That could be potentially in theory, but in this case the trial court appointed a new attorney. Once the attorney has been appointed, you have to obtain a voluntary and knowing waiver of that right to counsel, and the Illinois Supreme Court has been clear that we do that through 401A. No, I agree with you. But once he's waived the lawyer once, you're saying that each time he gets a new lawyer, there has to be an intelligent waiver? Yes, absolutely. Okay. For what reason? I don't know. He doesn't know that he's entitled to a lawyer? What would be behind that rule? The second time around. This court said it in Cleveland. The defendant may have already heard the admonishments. This does not know. You're ignoring what happened in Cleveland. In Cleveland, I was part of the panel, and I agreed with the outcome. The defendant goes through trial without counsel, and then at sentencing he realizes his life is at stake, and he says, you know what, I think I want counsel now. And at that point, the trial judge said no, and I think he was entitled to counsel when he said he was entitled to counsel, when he said he wanted counsel. But in this case, the defendant is not saying he wants counsel so much as he's saying he wants an attorney that meets all of his conditions and requirements and is the attorney he has imagined in his head. However, he is requesting counsel on every February 15th, June 6th, June 19th, June 27th. And if all he wanted was counsel, it would have been an easy thing to comply with. And, in fact, it was repeatedly complied with. The judge appointed a variety of counsel, and each time he wasn't to his satisfaction. So he said that he wanted counsel. But he didn't. But he showed that he didn't want counsel. I would disagree. All right. And his conditions were totally unreasonable. I would say on every court date, he is saying, I want counsel. I don't want to represent myself. Maybe the trial court didn't make it clear, or it wasn't saying that we're not going to see him. The trial court is saying it more than any judge I've seen in years. I would just say that given his continued request for counsel. And it wasn't just one judge. It was three judges, I think. But in any event, counsel, I don't mean to interrupt you. We're going over the same grounds repeatedly. We're going to give the State a chance. You'll have a minute or so to, but you can wrap up. Your Honor, just given the fact that he wasn't properly punished on October 30, 2008, and any date after that, and he had been appointed attorney, I believe that because of that, his conviction should be reversed and remanded for a new trial. And regarding the standby counsel, I don't think that was a, you know, he should have had standby counsel and there should be a reverse remand on that as well. Mr. Bendeck, given your claim, you've done a wonderful job. Thank you, Your Honor. I'll reserve some time for rebuttal. You'll get a minute or so. Good morning, Your Honors. Nancy Colletti, Assistant State's Attorney on behalf of the people. I'm sorry, your surname is? Nancy Colletti. Colletti? And I don't think you have to spend a lot of time with us. But I do have a question for you. Yeah. That concerns what sort of rule is your office seeking in light of the situation that occurred below in this case? Are you asking us to enforce or read Simpson the way Justice Cahill has set it out, that it's a one-time opportunity and that once he relinquishes his right to conduct? Not Justice Cahill, Justice Miller. Justice Miller through Justice Cahill. That it's a one-time? Yes. That's what I'm asking. What is your office seeking? What we're seeking in this case is for this court to agree that this defendant was made fully aware of his rights. And his Sixth Amendment right was really given to him on a silver platter in this case by the judge. So no admonishment was required in October? No. No date cited by counsel at all? No. This case is completely so far afield from the situation in Cleveland. And, you know, at the very least, as a matter of policy, in this case, if this court were to say that the court had not at least substantially complied, which it did more than that, complied with giving the defendant his admonishments, that this would allow every defendant to delay trial. This defendant was fully aware of his rights. He was fully aware. He was made aware by the trial court the consequences of him firing yet more counsel. You have four choices. You can be represented by the PD, by any of the four private attorneys that were offered. And there were four offered to him, none to his liking. You can hire your own counsel, which he could not do. Or you can proceed pro se. And he did have counsel on October 30th and, again, rejected that counsel. He knew the consequences of his decision at that point. He had been admonished at least four times by two of his different, out of the three judges that he appeared in front of. And as a matter of policy, at the very least, that a defendant who attempts to thwart the administration of justice, as Judge Six found, he said it twice, both in October and December, you don't want to go to trial. You're doing this because you do not want to go to trial. This was not a defendant like in Cleveland. So should a situation so should our ruling in this case really turn on that finding by the trial court, that everything he engaged in was dilatory. Yes. And that his real reason, he didn't really want to go to trial. And under that situation, the rule under the 401 rule can be relaxed substantially. And found that there was substantial compliance. Because he was not, as Justice Cahill was talking about. If we call it substantial compliance, there's case law that says what it is. As Justice Cahill was talking about in the Simpson case, it was a different situation where the defendant had appeared pro se. This defendant did have counsel, rejected counsel, had counsel, rejected counsel, back and forth, playing a game. All right. As to the standby counsel issue, there is no case in Illinois that has held that the judge is found in any way. Yes. But the court is not bound to appoint standby counsel. Yes. And the judge did exercise proper discretion in denying that request. We would ask that you affirm the defendant's conviction. All right. Thank you. Thank you. All right, Mr. Bennett, at least one question is, should we simply ignore or why shouldn't we rely on the trial judge within his discretion finding, based on his interaction with the defendant, that everything he was engaged in was dilatory and that he really didn't want to go to trial, and therefore all of his actions about firing and hiring had nothing to do with counsel. It had everything to do with that he didn't want to go to trial. However, even if he has that finding, you still need to comply and obtain a volunteering knowing waiver at that point. Do you have a case that says that? I mean, the trial judges are given a great deal of discretion. I think Brown speaks directly on point. It says either you acquire the defendant to proceed pro se with proper admonishments or keep the PD for effective yet not appreciated representation. I think it is directly on point. And in this case, Judge Sachs, I think he was very patient, obviously, with this defendant. He also appointed the attorneys. This was not, you know, a one-way street. This was a two-way street between Judge Sachs and Mr. Ware. And because he appointed the attorney, it is then his requirement to admonish 401, according to 401A, or in some other realm, in order to have him take the attorney away. Each have his parts. Yes. Absolutely. And regarding the standby counsel issue, I don't think it's as clear cut. I know there is no Illinois case where the trial court said abuse of discretion. I thought there's a blanket policy in this case. I mean, when a man goes pro se, a man goes pro se. Wouldn't you say that there's a blanket policy in virtually every criminal court that doesn't appoint? Every time a judge says, I'm not going to appoint, I'm not going to appoint or I'm asking you to do my discretion. That's not what Gibson says. Gibson says you have to consider these three factors. No, no. But Gibson was one where the judge said he didn't think he had that sort of discretion. Correct. But, however, I mean. not to exercise it. And that may or may not be a blanket policy, but it's still a matter of discretion. But you need to recognize that you have the discretion. You can't say, I have a blanket policy. I mean, those two are not interchangeable. If you have a blanket policy for every defendant, that is not your discretion. If a judge said, I have a blanket policy, quoting, if the judge actually used those words, then you might have a case. I haven't seen a case yet that those words are used. You can wrap up. Your Honor, given the fact that Mr. Ware did not receive substantial admonishments according to 401A on October 30, 2008, and any date after that, after he had been appointed counsel, the trial court failed here and Mr. Ware's constitutional rights to counsel were violated. We ask that he reverse his conviction and remand for a new trial. Thank you, Your Honors. All right. Thank you very much. The case will be taken under advisement. We're going to take a short recess and come back momentarily.